■ Donahue, J.,
dissenting. The mere statement of the question presented in this .record would seem to indicate the only possible and just solution of it. I,am, entirely in accord with my associates in their hostility to the vicious fee system *88 for compensation of public officers, but I do not agree with the majority of the court that in order to sustain the salary law it is necessary to deprive any county official of that which he is entitled to receive by every fair rule of right and reason, The act of the general assembly of Ohio fixing á salary for county officers was necessarily very comprehensive in its terms. It was, undoubtedly, the legislative intent to abolish the fee system entirely, and at this time it appears that that has been accomplished, but in the very nature of things it was impossible to foresee all the exigencies that might arise in making such change, so that justice would require the payment of fees for extraordinary services; therefore, this comprehensive salary law could not have been intended to cover any services except the regular, uniform service of each county officer, common to that office in each county of the state alike. It certainly was not intended that in some counties the board of commissioners, by its order, could require the recorder to perform important, expensive and laborious public service without compensation therefor, or that that official must, upon the order of the county commissioners, perform all this extraordinary service, wholly beyond the duties common to this office in all the other counties of the state, and, notwithstanding such extraordinary service, receive the same salary only that a like official in another county of like population receives for the regular and ordinary duties of his office where no such order had been made by the county commissioners. If such were the legislative intent, then *89 the salary law would not only be unfair and unjust, but it would not be uniform throughout the state.
In this particular case this county recorder was elected at the November election, 1905, and entered upon the discharge of his duties in the following year. The salary law did not go into effect until January 1, 1907. The petition does not aver when the county commissioners ordered these indexes to be made, nor does it aver when the services were performed. It does aver the date that the money was drawn from the treasury, but it furiher avers that this money was drawn upon bills for this service “theretofore allowed by the county commissioners.” When this recorder went into office no question could arise as to his right to receive compensation for this service under the statutes then in force in this state. The county commissioners at that time unquestionably had full power to order the indexes made and to allow compensation therefor. In brief of counsel for defendant in error it is said that this order was made in July; 1906. Of course we cannot consider that statement in disposing of this demurrer, but the rule obtains that a pleading shall be construed most strongly against the pleader, and "if the pleader has failed to negative a possible condition of affairs under which these fees could lawfully be paid out of the county treasury without any legal obligation to return the same, then the petition is vulnerable to a demurrer. This, however, is only a technical disposition of this case. The real question is whether, under the provisions *90 of Sections 1154, 1155 and 1158, Revised Statutes, construed in connection with the salary law, this recorder was required to pay back into the county treasury to the credit of the fee fund the fees allowed him by the county commissioners for making these indexes upon the order of that board to make the same. That this construction is not possible under these statutes as they then existed is evident from the reading of the statutes themselves. Subsequent legislation upon the same subject-matter leaves no room for controversy.
It is not important whether these indexes were authorized to be made under the provisions of Section 1154 or Section 1155, Revised Statutes. It was said by this court in the case of The State, ex rel., v. Wickham, 77 Ohio St., 1, that, under the authority of these statutes, “the. power to direct and the obligation to pay are reciprocal.” The several recorders in the s.everal counties of the state are required by statute to perform certain duties common to that office in each county, and in order that this salary law should have uniform operation throughout the state, and in order that its operation should be just and fair to every county-recorder, it must necessarily have been the intent of the general assembly to fix the salary of county recorders for the performance of the regular duties imposed by statute uniformly upon each and all of the recorders within the state. It would seem to be a reflection upon the honesty and intelligence of the general assembly to hold that it intended to include in this uniform salary of county recorders extraordinary duties equal to or *91 greater in extent than all the other duties of a county recorder combined, and which might be imposed by county commissioners in some counties and not imposed in others. The duty of making these general indexes is not necessarily the duty of the recorder. True, Section 1154, Revised Statutes, imposed this duty upon him when the county commissioners made the order, but at that time Section 11535 provided that in all counties containing a city of the second grade of the first class the county commissioners should advertise and sell the work of preparing such indexes to the lowest bidder, and require him to give bond for the performance of the work. It is hardly necessary to say that if the duty of making these indexes devolved upon the county recorders of the several counties of the state, the legislature could not relieve the recorders in some counties from performing this duty and require them to perform it in others. Clearly such a law would not be of uniform operation throughout the state. In this connection I would call attention to the present law upon the same subject, which provides that in all the counties of the state the work of making these indexes shall now be advertised and let to the lowest'bidder, so that the legislature evidently did not consider this as one of the uniform duties of county recorders throughout the state or the duty of any county recorder, except in so far as it might be imposed by the order of the county commissioners in some counties, and, therefore, could not have intended to include it with the uniform duties to be compensated for by the general salary *92 act. The general salary act did not in express terms repeal these sections, although these sections provided that the payment for the services required under these laws should be in addition to all other fees. It is said, however, that the language of the salary act is so broad and comprehensive in its terms that it repeals Sections 1154, 1155 and 1158, Revised Statutes, by implication. It is conceded that the policy of our law is against repeals by implication, and that it is only where there is positive, direct and irreconciláble conflict between the later and prior act that the prior act is repealed by implication. There is no such conflict between these acts. One necessarily and reasonably applies to the uniform duties of the county recorders of all the counties of the state. The other provides for compensation in addition thereto for extraordinary services that the county recorders of some counties may have to perform at the will and pleasure of the county commissioners. Certainly such legislation as this does not present an irreconcilable conflict requiring a court to hold that the prior act is repealed by implication. That the legislature did' not recognize any such conflict is evidenced by later acts. In 1910, when the Code was adopted, these statutes were rewritten practically in terms and reenacted into the statutory law of this state together with the salary act. This is in effect a declaration by the legislature that, notwithstanding the comprehensive terms of the.salary act, the compensation allowed to county recorders for making these indexes shall be in addition to other fees. It is in *93 sisted, however, that the only way to reconcile these statutes is to require the recorder, after drawing this money out of the treasury, to .pay it back into the fee fund of the county, but that that was not the intention of the legislature is also clearly evidenced by the later act in which it is specifically provided by amendment of Section 2780, General Code (Section 1158, Revised Statutes, 102 O. L., 227-290), that fees received for the services performed under that section must be paid into the county treasury to the credit of the recorder’s fee fund. If the proper construction of Section 2995, General Code, providing for uniform salary, theretofore required fees for services performed under the provisions of Sections 1154 and 1158, Revised Statutes, to be paid back into the county treasury to the credit of the fee fund, the legislature of the state was wasting its time when it amended this section for the purpose of requiring that thereafter this should be done and omitting from the amended statute all reference to fees for making general or other indexes upon order, of the county commissioners. It is evident that the legislature of the state did not intend or expect any-such construction of the salary act, otherwise it would not have troubled itself to make the amendment.
There is, however, a further amendment in the same act that is conclusive of the questions here involved. Section 1154, Revised Statutes (Section 2766, General Code), was also amended, providing that when indexes should be ordered to be made by the county commissioners, the work of *94 making the same should be advertised and let to the lowest bidder, and that the compensation therefor should be paid out of the public treasury. If the duty of making these indexes is an ordinary and uniform duty that attaches to the county recorder’s office and covered by the uniform salary provided by the legislature for that officer, the general assembly was certainly magnanimous in relieving him from the performance of this enormous work and profligate of public funds in providing that the compensation for such work should be paid out of the county treasury with no hope or expectation of return thereof to the credit of the fee fund or any other fund. The general assembly of the state of Ohio is not in the habit of making large financial donations of public funds to county recorders or any other class of county officers. It could have had no other reason for passing this amendment except that this work was not included nor intended to be included within the work to be compensated by the recorder’s salary, but, on the contrary, that it is an extraordinary service for which the recorder was entitled to receive the additional fees provided for in the statute authorizing the commissioners to cause this extraordinary work to be done, and that the legislature believed it was in the interest of economy to advertise and let to the lowest competitive bidder the making of these indexes instead of paying to the recorder the compensation stipulated in the original act Why, if the contention of the plaintiff in error in this case is correct, and the making of these indexes is a uniform duty that attaches to the *95 office of county recorder, the legislature might just as well have provided that recording all deeds, mortgages and other instruments should be let to the lowest competitive bidder and paid for out of public funds, and still permit the county recorder to draw his full salary. This is so self-evident as to require no argument. If the making of these extensive indexes is a part of the uniform duties of the county recorders throughout the state, except in counties containing a city of the second grade of the first class, and the compensation for the performance of such duties was included in the salary provided for county officers, then the general assembly of the state, in defiance of the rights of the public, has relieved these officers from the performance of these duties and provided that the compensation for others who do the work shall be paid out of the public funds and has made no corresponding diminution in the salaries of the officers whose duty it is to perform this service.
Of course, the legislature intentionally did nothing of the kind. It knew the duties for which it had provided this uniform salary, otherwise it could not have arrived at any just and fair salary to be paid for the services. These indexes must be made only in counties where the county commissioners make an order requiring them. The legislature must have known that in some counties the commissioners would make such order, that in other counties they would make an order for part of such indexes, as was done here, and that in other counties no order whatever would be made. In view, therefore, of the uncertainty of the *96 amount of this extraordinary service that some of the several county recorders would be required to perform, no just, uniform salary could be fixed therefor. The only way a uniform salary could be fixed by the legislature would be to fix a salary that would cover the uniform duties of the county recorders in all the counties of the state and not attempt to include in such salary compensation for service that might or might not be required to be performed by the several boards of county commissioners of the several counties of the state. Therefore, when the general assembly amended the statute it amended it in the furtherance of economy and not in the furtherance of extravagance, waste or charity to county recorders at public expense. It is also self-evident that if those duties attached to the county recorder in such sense that they were necessarily covered by the salary provided for county recorders the legislature would have no authority to interfere with the elected officer of the people in the discharge of his duties or to provide that any of his duties should be performed by a stranger to his office. In brief, if this later amendment is constitutional, and no one seems to question its constitutionality, then the duty of making these general indexes did not and does not attach to the office of county recorder, and the compensation for the performance of these duties was not covered or intended to be covered by the salary act.
There is a further consideration, however, that is decisive of this question. It is true that in this particular instance only a part of the indexes *97 was directed to be made, yet if the county commissioners could order a part of these indexes to be made without compensating the county recorder for making them, they could by authority of the ; ame statute have required all of the general indexes to be made therein provided'for, starting.with the first records of the county and bringing them down to that tipie. ■ In other words, this recorder would be required to perform not only the’ duties incident to his office'during the time that he was in'office, but he must go back over the work of all preceding recorders and prepare and bring down to date indexes of all their work that they should have made and would have been required to niake, if the necessity and importance of such indexes 'had been recognized in the earlier history of the state. The colossal 'nature of these indexes completely refutes the proposition that it was the intention to include compensation for these services in the general salary act. The provision that, in counties containing a city of the second grade of the first class, this work should be upon the competitive bidding plan, applied only to one county—Cuyahoga. All other, counties were included within the provisions of Sections 1154 and T155, Revised Statutes. Suppose that the county commissioners of some of the larger counties of this state had made an order requiring the county recorder to make these general indexes from the earliest history of the county down to date, is it possible that the county recorder would be compelled to perform this immense service that, with the exercise of all due diligence, would take years to complete, and re *98 ceive no compensation therefor beyond the salary paid to him for the ordinary, uniform duties of that office, equal in amount only to the salary paid the recorder in a neighboring county of like population where no such order was made? It is true that by the last amendment of Section 2780, General Code, (102 O. L., 277-290), the legislature has provided that the fees for transcribing records of other counties, the transcribing defaced or injured records, shall be paid back into the treasury to the credit of the recorder’s fee fund, and it is also true that the commissioners have authority to order this work to be done, and may order it in some counties and may not order it in others, yet the largest amount that could possibly be required in any county is so trifling in comparison with the making of the general indexes of all the records of a county that it presents no parallel case and is no argument in favor of the contention here made upon behalf of the relator. The work of making a complete general index of all the records of any of the counties of this state is such that it would require at least the entire time of a county recorder during all of one term of office. In fact, it is a matter of serious doubt whether it could be completed within one term. At all events, to do the work of such gigantic nature, would at least double the duties of the county recorder in each county where such an order may be made by the county commissioners. To require a county recorder to make such indexes for a salary fixed for the uniform and ordinary duties of each of the county recorders in all of the several counties *99 of the state would be an unjust and unfair imposition upon that officer.
I yield to no man in the sincerity of my purpose to protect the public treasury from the assaults of individual greed, but on the other hand I insist that the state should set an example of honesty and fair dealing to which its officers and citizens must conform. There was, indeed, sad need of reformation of the abuses that had grown up under the fee system. In some of the counties of this state there were officers drawing fees for services that required no particular preparation, knowledge or professional skill to perform, aggregating an amount equal to the combined salaries of the governors of ten of the states of this Union, but in bringing about this needed reformation it is not necessary that any county officer should be burdened with the performance of such enormous and extraordinary duties as those provided for in Sections 1154 and 1155, Revised Statutes, without compensation therefor. The amount of the salary of county recorder fixed by statute is fair, reasonable and just for the ordinary and uniform duties of that office in each of the several counties of the state, and evidences the intention of the state to pay a fair price for this service, but if these duties be doubled or trebled in one or two or three of the counties at the will of the county commissioners, and the recorders in this one or two or three counties be compelled to perform these additional duties, then the uniformity of this law is destroyed, and the office of county recorder becomes a burden instead of a profit. The people of this state do not *100 desire or expect this. They are willing to pay a' fair and reasonable price for all public service per-1 formed. All that they ask is that when that' price is paid the hand of greed be stayed to prevent the* looting of public funds.
For these reasons, I cannot agree with-the judg-’ ment of the majority of this court, and I sincerely regret that my associates • have found it necessary to enter such a judgment.
Newman, J., concurs in the dissenting opinion.